**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Oji K. Markham,

                  Plaintiff,

v.

Officer Kelgar[1] #131309, Lt. Klien[2]
#119943, and Chief Jason Ohotto #30262,

                  Defendants.

Case No. 25-cv-03449 (ADM/ECW)

**REPORT AND RECOMMENDATION**

---

This action comes before the Court on Defendants' Motion to Dismiss (Dkt. 16).

This case has been referred to the undersigned United States Magistrate Judge for a report

and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Dkt. 29.) For

the reasons stated below, the Motion to Dismiss should be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2025, Plaintiff Oji K. Markham ("Plaintiff" or "Markham") filed

the initial Complaint against Defendants. (Dkt. 1.) Prior to the present Motion to

Dismiss, Plaintiff filed the operative Amended Complaint on December 12, 2025,

---

[1]     The Complaint and Amended Complaint use "Kelgar" (Dkt. 1 at 1; Dkt. 13 at 1),
but Defendants' Memorandum in Support of Motion to Dismiss states that "Caleb
Koecher" has been misidentified as "Kelgar." (Dkt. 18 at 1.) The Court uses "Koecher"
in this Report and Recommendation.

[2]     The Complaint and Amended Complaint use "Klien" (Dkt. 1 at 1; Dkt. 13 at 1),
but Defendants' Memorandum in Support of Motion to Dismiss uses "Klein" (Dkt. 18 at
1). The Court uses "Klein" in this Report and Recommendation.

asserting a Fourth Amendment claim against Defendants Officer Koecher, Lt. Klein, and Chief Jason Ohotto, in their individual capacities. (Dkt. 13 at 2-4.)[3]

The Amended Complaint alleges in relevant part as follows:

On August 2, 2025, Officer Koecher violated Plaintiff's Fourth Amendment rights by illegally seizing Plaintiff's identification card for no reason and running the identification, which amounted to an illegal search. (*Id.* at 3-4.) Officer Koecher stated that his reasonable suspicion for "running Plaintiff's ID" was because a moped was parked next to a group of "black guys" in a public park and had not seen how it got there.[4] (*Id.*) Officer Koecher threatened to tow his moped and used this fabricated basis to initiate contact with Plaintiff in order to "run" his state identification, amounting to an illegal search and seizure in violation of the Fourth Amendment. (*Id.* at 4.) "Plaintiff's moped parked in a park (Peavey Park over South Minneapolis) was not enough to be suspicion of a crime," there was no crime being committed when Officer Koecher initiated contact, he never stated his articulable suspicion, he fabricated a story to run Plaintiff's identification, and Officer Koecher demanded Plaintiff's identification under threat of arrest. (*Id.* at 3-4.) A stop-and-frisk without reasonable suspicion is an

---

[3]    Unless otherwise stated, page citations in this Report and Recommendation refer to the page citations assigned by CM/ECF.

[4]    Markham refers to the vehicle at issue as a "bike," a "moped," and a "motor bike" in his papers. (*See, e.g.*, Dkt. 13 at 3, 4; Dkt. 30 at 7, 8, 17, 18.) The Court uses these terms interchangeably to refer to the two-wheeled vehicle at issue in this Report and Recommendation.

unconstitutional seizure under the Fourth Amendment to the U.S. Constitution, as established by the Supreme Court in *Terry v. Ohio*. (*Id.* at 4-5.)

Lt. Klein and Chief Jason Ohotto violated Plaintiff's Fourth Amendment rights by refusing to write an incident report after Plaintiff filed a "Police conduct complaint form" with respect to his encounter with Officer Koecher. (*Id.* at 2; *see also* Dkt. 13-1.)

Plaintiff seeks $2 million in monetary damages related to his unlawful detention without an articulable reasonable suspicion. (Dkt. 13 at 10.)

On December 22, 2025, Defendants filed their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 16.) As part of their Motion to Dismiss, Defendants argue that the Amended Complaint should be dismissed as to Defendants Lt. Klein and Chief Ohotto because Plaintiff does not have a constitutional right to the generation of a police report. (Dkt. 18 at 5.)

As to Park Police Officer Caleb Koecher, Defendants argue that while Markham alleges that Koecher required him to produce his identification, the video of the interaction shows that Markham voluntarily provided his identification to Officer Brown, Koecher's partner, for which there is no constitutional claim. (*Id.* at 2-3, 6.) In addition, Defendants argue that because Officer Koecher had probable cause to believe that a violation of the ordinance was being committed by having a motorized vehicle in the park, he had the authority to investigate further by asking the persons closest to the moped who owned it, and that once Plaintiff stated it was his moped, Officer Koecher had more than reasonable articulable suspicion that the ordinance was being violated by Plaintiff having the moped in the park to continue his investigation by asking for

Plaintiff's identification to verify his claim of ownership and to verify that he had a valid driver's license to drive the moped away. (*Id.* at 6-8.) As such, Defendants maintain that Plaintiff has not set forth a plausible claim that Officer Koecher violated his constitutional rights by requesting his identification. (*Id.*)

Defendants also argue that they are entitled to qualified immunity. (*Id.* at 8-9.)

In his opposition to the Motion to Dismiss, Markham argues that Defendants' reliance on violations of city ordinances has nothing to do with the violations of his Fourth Amendment rights. (Dkt. 30 at 2.) Markham also argues that the body camera footage shows Officer Koecher (not his partner Officer Brown) initiating threatening contact with Plaintiff to tow the moped and ordering the production of his identification. (*Id.* at 7.) Moreover, Markham asserts that Defendants have not set forth Officer Koecher's reasonable suspicion, as he did not see how the bike, which did not have its key in the ignition, got there, or who drove it, only that it was next to a "group of black guys." (*Id*. at 8.) Plaintiff maintains that Officer Koecher could not articulate suspicion at that time, because there was none at that point, and instead Koecher fabricated a story about Plaintiff's bike to initiate contact to run his identification for no reason in violation of the Fourth Amendment under *Terry v. Ohio*. (*Id.* at 8, 16-17, 19.) In addition, Plaintiff argues that any argument that Officer Koecher would have needed to tow the bike makes the encounter an illegal traffic stop, as Plaintiff was not breaking the law and he did not feel free to leave. (*Id.* at 9-10.) According to Plaintiff, any assertion that this was voluntary is contrary to the duress he was under. (*Id.* at 16.) Further, Plaintiff argues that his moped is not a motor vehicle because it is not over 49cc and therefore, it

4

is not prohibited from the parks under the city ordinances, thereby giving Officer

Koecher no basis to believe that any law had been broken.  (*Id.* at 17-18.)

With respect to Lt. Klein and Chief Ohotto, Plaintiff argues that any assertion that

he does not have a constitutional right to a police report is counter to the fact that officers

are instructed on the importance of accurate reports, and their failure to provide a report

amounts to a due process violation by destroying and tampering with evidence, thereby

implicating his Fourth Amendment rights.  (*Id.* at 10-13.)

Plaintiff asserts that Defendants are not entitled to qualified immunity.  (*Id.* at 20-

24.)

Defendants filed a reply on January 16, 2026 making this Motion ripe for a

decision.  (Dkt. 32.)

## II.    LEGAL STANDARD

As set forth above, Defendants bring the Motion to Dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (Dkt. 16.)  Motions to dismiss under Rule 12(b)(6)

assert that a plaintiff's pleadings "fail[] to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  Certain safeguards apply to a Rule 12(b)(6) motion.

First, when considering a Rule 12(b)(6) motion, a court construes pleadings in the light

most favorable to the nonmoving party, and the court must take a pleading's factual

allegations to be true.  *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)

(quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).  Second, a court must

afford the nonmoving party all reasonable inferences from a pleading's allegations.

5

*Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009)).

Notwithstanding these points, to withstand a Rule 12(b)(6) motion, litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard "does not require detailed factual allegations, but [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Iqbal*, 556 U.S. at 678 (citation modified).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

As a result, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint 'to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (ellipses in *Ritchie*)).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679.

Following *Twombly* (and consistent with *Iqbal*), the Eighth Circuit has provided further guidance on Rule 8's pleading standard:

> While a Plaintiff need not set forth "detailed factual allegations," *Twombly*, [550 U.S. at 555], or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, [93] (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, [550 U.S. at 555 n.3].  A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako* [*v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004)], and it need not "conjure up unpled allegations" to save a complaint.  *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).  "Though 'matters outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)).  Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment.  *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).  In addition, the Court need not adopt a plaintiff's version of

the facts on a Rule 12(b)(6) motion if they are "blatantly contradicted by video

evidence." *See Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (citation modified).

### III.    ANALYSIS

### A.    Claim Against Defendant Officer Koecher

As noted previously, Defendants argue that Officer Koecher's conduct on August

2, 2025 did not violate the Fourth Amendment and even if Markham pleaded sufficient

facts to support his constitutional claim, his claim should be dismissed because Officer

Koecher is entitled to qualified immunity.  (Dkt. 18 at 6-9.)  Given that a qualified

immunity analysis addresses both of these issues, the Court proceeds with this analysis

with respect to Markham's Fourth Amendment claim against Officer Koecher.

"The doctrine of qualified immunity protects government officials from liability

for civil damages unless a plaintiff pleads facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time

of the challenged conduct."  *Wood v. Moss*, 572 U.S. 744, 757 (2014) (citation modified);

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity

protects government officials from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." (citation modified)).  "[D]efendants seeking

dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show

that they are entitled to qualified immunity on the face of the complaint.'"  *Carter v.*

*Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d

1012, 1015 (8th Cir. 2005)).  The pleading standard under *Iqbal* and *Twombly* (*see supra*

Section II) applies. *Wood*, 572 U.S. at 757-58. Courts may consider the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 241 (2009). A § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

The U.S. Supreme Court has defined the "clearly established" requirement for the purposes of qualified immunity as follows:

> "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This requires a high "degree of specificity." We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018) (citations omitted). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). The relevant question for the application of qualified immunity is whether there are any cases "where an officer acting under similar circumstances as [the defendant] was held to have violated the [Constitution]." *White v. Pauly*, 580 U.S. 73, 79 (2017).

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, (1968)), *overruled in part on other grounds by Davis v. Washington*, 547 U.S. 813 (2006). Even assuming that the encounter between Officer Koecher and Markham was not consensual,[5] "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is

---

[5] "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citation omitted) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Officers may approach individuals and ask them questions and ask for their identification "as long as the police do not convey a message that compliance with their requests is required." *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021). Here, taking the allegations of the Amended Complaint as true and reviewing the video (Dkt. 19-1), the Court finds that the identification was required based on Officer Koecher's statement that he was going to have tow the moped if Plaintiff did not provide an identification. (*See infra* at Section I.)

afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see also United States v. Dortch*, 868 F.3d 674, 678 (8th Cir. 2017) (finding that an officer may conduct an investigative stop and brief detention when he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" (citation modified)).  Contrary to Plaintiff's arguments, this extends to violations of city ordinances.  *See United States v. Banks*, 553 F.3d 1101, 1103-04 (8th Cir. 2009) (rejecting the defendant's argument that his seizure by police pursuant to *Terry* for a petty misdemeanor violated his rights under the Fourth Amendment and holding that the officer's observations of the defendant's violation of city ordinance provided reasonable suspicion for a *Terry* stop even though, under Minnesota law, no custodial arrest was authorized for violating the bicycle ordinance); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (addressing probable cause with respect to violations of ordinances).

"[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.  "While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Riley*, 684 F.3d 758, 763 (8th Cir. 2012) (citation modified).  "Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *United States v. Mosley*, 878 F.3d 246, 251 (8th Cir. 2017) (citation modified).  "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties'

11

behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995). In deciding whether the requisite degree of suspicion exists, a court views an officer's observations as a whole, rather than as discrete and disconnected occurrences. *See Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Here, the Amended Complaint alleges "Plaintiff's moped parked in a park (Peavey Park over South Minneapolis) was not enough to be suspicion of a crime." (Dkt. 13 at 3.) However, Minneapolis Park and Recreation Board Ordinance PB9-6 states:

> PB9-6. - Vehicles prohibited in nondesignated areas.
>
> No vehicle is permitted to be on any footwalk, lawn or any other grounds on parks or parkways not designated for traffic or parking purposes, unless otherwise permitted by the rules, regulations and ordinances of the park and recreation board.

(Dkt. 19-2 at 2.) The Minneapolis Park and Recreation Board Ordinance PB9-2 defines "Vehicle" as: "Every device in, upon or by which any person or property is or may be transported or drawn upon a street or highway, except devices moved by human power, or used exclusively upon stationary rails or tracks." (*Id.* at 1.) Plaintiff's Amended Complaint concedes that there was a moped in the park. (Dkt. 13 at 3.) As such, when Officer Koecher observed the moped in a Minneapolis Park, he had reasonable suspicion,

and even probable cause,[6] to believe a violation of the ordinance was in progress. Markham's argument that the moped did not have an engine over 49cc (Dkt. 30 at 18) is of no avail, as the Ordinance does not differentiate between the size of a motorized vehicle's engine, or any engine for that matter, and only requires that it can transport a person without human power.

Plaintiff appears to argue that Officer Koecher did not have reasonable suspicion to approach him regarding the moped because video evidence shows that he was not on the bike and the keys were not in the ignition. (Dkt. 30 at 17-18.) However, the video in question shows Markham standing right next to the moped under a picnic table pavilion in the park when he was approached by officers. (Dkt. 19-1 at 0:39.) He was told that the moped could not be there and Markham inquired as to the reason why and proceeded to say that the bike was a 49cc. (*Id.* 0:39-50.) Officer Koecher then stated that he assumed the moped was Plaintiff's, and Markham responded that it was his. (*Id.* at 0:39-1:04.) Officer Koecher told Markham that he needed to see his identification, then he could get Markham on his way, but if he was not going to claim the bike, Officer Koecher was going to have it towed, and that if Markham was going to be driving it, Officer Koecher had to make sure he had a valid license. (*Id.* at 0:39-2:42.) No ticket was issued, Plaintiff's license was returned to him after he had provided it to law

---

[6]     Probable cause under the Fourth Amendment "to conduct a traffic stop exists as long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." *See United States v. Linnell*, 93 F.4th 1102, 1105 (8th Cir. 2024) (citation modified).

enforcement, Markam was told to walk the moped out of the park, and then the police left. (*Id.* at 2:43-5:23.)

"[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.,* 542 U.S. 177, 186 (2004). However, "the request for identification [must be] reasonably related to the circumstances justifying the stop." *Id.* at 188. In addition, traffic-related inquiries are permissible because they "serve the same objective as enforcement of the traffic code" and "ensur[e] that vehicles on the road are operated safely and responsibly." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).

Plaintiff's argument that his motor bike, which he asserts was not a "motorized vehicle over 49cc," did not require a driver's license to drive is without merit. (Dkt. 30 at 18.) Based on the allegations in the Amended Complaint and the video of the events at issue, Plaintiff's bike had a 49cc engine (Dkt. 19-1 at 0:48-50), making it a motorized bicycle under Minnesota law:

> "Motorized bicycle" means a bicycle that is propelled by an electric or a liquid fuel motor of a piston displacement capacity of **50 cubic centimeters or less**, and a maximum of two brake horsepower, which is capable of a maximum speed of not more than 30 miles per hour on a flat surface with not more than one percent grade in any direction when the motor is engaged. Motorized bicycle does not include an electric-assisted bicycle as defined in subdivision 27.

Minn. Stat. § 169.011 , subd. 45 (emphasis added); *see also* Minn. Stat. § 171.01, subd. 41 (stating that for purposes of Chapter 171, "'Motorized bicycle' has the meaning given in section 169.011, subdivision 45"). In order to operate a motorized bicycle under Minnesota law, a driver's license or a motorized bicycle permit is required: "(a) A

14

motorized bicycle may be operated under either a driver's license or a motorized bicycle permit issued under section 171.02, subdivision 3." Minn. Stat. § 169.223, subd. 2(a). Plaintiff has provided no authority to the contrary.

Given the presence of an illegal vehicle in the park and proximity of Plaintiff to the vehicle, nothing prohibited Officer Koecher from approaching Markham regarding the vehicle and then asking for identification to ensure that Markham could drive the vehicle he claimed to own for the purposes of enforcement of the traffic code, requiring a license to drive the vehicle, and to ensure that vehicles on the road are operated safely and responsibly. *See United States v. Guerue*, 647 F. Supp. 3d 744, 756–57 (D.S.D. 2022) ("Nothing prohibited Dillon from prolonging the traffic stop as he awaited the dispatch response on whether Guerue or his passenger had a warrant out for their arrest, determined whether a traffic ticket or warning would issue, and resolved whether a licensed driver was available to drive the car.") (citing *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (concluding that when none of the occupants of a vehicle were licensed to drive, the officer was permitted "to engage in a community caretaking function of safely moving the vehicle and its occupants from the side of the road")).

For all of these reasons, the Court recommends dismissal of the Amended Complaint, as Plaintiff has not plausibly alleged a Fourth Amendment violation against Officer Koecher related to the August 2, 2025 incident. Even assuming that the Amended Complaint adequately alleges a plausible Fourth Amendment violation, Officer Koecher is entitled to qualified immunity because there is no Eighth Circuit case cited by

Markham, nor could the Court locate any case, finding that approaching a person next to a vehicle illegally in a park and seeking their identification when they claimed ownership amounts to an unconstitutional search and seizure under the Fourth Amendment. *See White*, 580 U.S. at 79.

**B.    Claims Against Lt. Klein and Chief Jason Ohotto**

As set forth above, the Amended Complaint alleges that Lt. Klein and Chief Jason Ohotto, violated Markham's Fourth Amendment rights by refusing to write an incident report after Plaintiff filed a "Police conduct complaint form" with respect to his encounter with Officer Koecher. (Dkt. 13 at 2; Dkt. 13-1.) In his opposition to the Motion to Dismiss, Markham argues that the failure to generate a police report at least amounts to a due process violation by destroying and tampering with evidence, thereby implicating his Fourth Amendment rights. (Dkt. 30 at 10-13.) Markham has no due process right that law enforcement officers investigate his complaint, let alone generate a police report on demand. *See Donaldson v. City of Chicago*, 784 F. App'x 957, 959 (7th Cir. 2019) (holding that the plaintiff failed to state a "federal due-process claim because he does not have a constitutional right to demand that the police investigate his alleged assault, even by merely completing a police report about the matter"); *see also Fife v. Tuscaloosa Cnty. Sheriff's Off.*, No. 720CV01992LCBNAD, 2021 WL 12159397, at *3 (N.D. Ala. Oct. 13, 2021); *see also Abella v. Simon*, 831 F. Supp.2d 1316, 1341 (S.D. Fla. 2011) ("This claim fails because there is no right to have the police write a police report. Courts have held that there is no constitutional right to a correct police report. If it is not a constitutional violation to file a false police report, it cannot be a constitutional

16

violation to file no police report." (citation modified)), *vacated in part on other grounds*, 482 F. App'x 522 (11th Cir. 2012).

Plaintiff's conclusory claims of tampering with evidence, without more, does not amount to a plausible claim, especially as he does "not have a constitutional right to an accurate police report. . . [and] there is no allegation of a deprivation of any liberty interest related to the police reports." *Haggins v. City of St. Paul*, No. CIV 09-537 DWF/RLE, 2010 WL 1379913, at *2 (D. Minn. Mar. 31, 2010); *see also Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969) (finding no due process violation for an alleged false police report, where there was no deprivation of life, liberty, or property, and State law prohibited the use of an accident report as evidence in a criminal or civil proceeding).

Markham's reliance on *Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000); and *Frisby v. Crow*, 121 F.3d 712 (8th Cir. 1997) (*see* Dkt. 30 at 21-22), is inapposite to the facts of this case. Each of these cases dealt with law enforcing's active tampering with evidence in criminal cases, such as the planting blood at the scene of a crime (*Livers*, 700 F.3d at 354); fabrication of evidence submitted to a grand jury (*Zahrey*, 221 F.3d at 353-54); and intentionally contaminating cash with drug residue in order to confiscate the money (*Frisby*, 121 F.3d at 712). That is not remotely what is alleged in this case, as Markham did not allege any active tampering with evidence and the failure to generate a police report, after the alleged illegal search and seizure with Officer Koecher occurred, did not result in any alleged deprivation of life, liberty, or property. For all of these reasons, the Court finds that Lt. Klein and Chief Jason Ohotto are entitled to qualified immunity given the allegations in the Amended

17

Complaint, and recommends dismissal without prejudice of the claims against them.

## IV.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**RECOMMENDED** that: Defendants' Motion to Dismiss (Dkt. 16) be **GRANTED** and

that the Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.

DATED: May 6, 2026                    *s/ Elizabeth Cowan Wright*
                                      ELIZABETH COWAN WRIGHT
                                      United States Magistrate Judge

## NOTICE

The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).